FIDELITY-PHILADELPHIA TRUST COMPANY, LOUISE REACH AND GEORGE A. REACH, EXECUTORS, ESTATE OF ALFRED J. REACH, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 51334. Promulgated March 20, 1933.

*John B. Peary, C. P. A.*, for the petitioners.
*L. S. Pendleton, Esq.*, for the respondent.

OPINION.

TRAMMELL: This proceeding is for the redetermination of a deficiency in estate tax of $9,395.31. The matters presented for determination are (1) whether any amount is to be included in the taxable estate of decedent as representing the value of certain bonds transferred in trust by the decedent prior to his death, the income from which was to be paid to two of his daughters during their respective lives and upon their respective deaths the entire corpus or principal of such trusts to be paid over to the decedent if living or if he be not living then unto such person or persons as he might by his will direct, limit and appoint and (2) what amount should be allowed as a deduction from the gross estate on account of bequests made by the decedent to certain charitable organizations.

The proceeding was submitted on a stipulation of facts, the pertinent portions of which are as follows:

1. That Alfred J. Reach, the decedent in this proceeding, died on January 14th, 1928, leaving a last will and testament bearing date of December 4th, 1926, a copy of which last will and testament is attached hereto and made a part hereof as EXHIBIT "A" * * *.

2. That on December 26th, 1918, the decedent, Alfred J. Reach, transferred to the Girard Trust Company, Trustee, by irrevocable deed of trust, United States Liberty Bonds of the par value of $50,000.00 and Philadelphia Electric Company First Mortgage Bonds of the par value of $45,000.00, the net income from which was to be paid to Louise Gray Jeffries, daughter of the decedent, during her natural life. A copy of said deed of trust is attached hereto and made a part hereof as EXHIBIT "B" * * *.

3. That on December 26th, 1918, the decedent, Alfred J. Reach, transferred to the Girard Trust Company, Trustee, by irrevocable deed of trust, United States Liberty Bonds of the par value of $50,000.00 and Philadelphia Electric

Company First Mortgage Bonds of the par value of $45,000.00, the net income from which was to be paid to Emma Mercer Christ, daughter of the decedent, during her natural life. A copy of said deed of trust is attached hereto and made a part hereof as EXHIBIT " C " * * *.

4. Both Louise Gray Jeffries and Emma Mercer Christ, daughters of this decedent, survived this decedent, Alfred J. Reach.

5. In the compilation of the Federal Estate Tax Return of this decedent by the Executors of his estate nothing was included in the gross estate representing the value of the bonds transferred to the Girard Trust Company, Trustee, as set forth in paragraphs " 2 " and " 3 " hereof.

6. The respondent, in his determination of the net taxable estate of this decedent, included in gross estate the sum of $110,217.80, which amount is the value of the Liberty Bonds of the par value of $100,000.00 and the Philadelphia Electric Company Bonds of the par value of $90,000.00 transferred to the Girard Trust Company, Trustee, on December 26th, 1918, as set forth in paragraphs " 2 " and " 3 " hereof, based upon the life expectancies of the decedent's daughters, Louise Gray Jeffries, and Emma Mercer Christ.

7. The decedent, Alfred J. Reach, made no mention of the powers of appointment reserved in the deeds of trust herein referred to in paragraphs " 2 " and " 3 " hereof in his last will and testament, referred to in paragraph " 1 " hereof.

8. The decedent, Alfred J. Reach, by his will dated December 4th, 1926, made provision for the ultimate payment from his estate of $50,000.00, each, to the Young Men's Christian Association, the Young Women's Christian Association, and the Salvation Army, which amounts were to be paid to these several beneficiaries upon the death of the last survivor of seven persons, aged respectively, 51, 55, 55, 57, 57, 60 and 82 years.

9. In the computation of the Federal Estate Tax liability of the estate of the decedent, Alfred J. Reach, a deduction for the charitable bequests referred to in paragraph " 8 " hereof was taken in the sum of $73,966.50, which amount represents the present value of $150,000.00, as of the date of the death of this decedent, using a factor of .49311, which factor is the present worth of $1.00 the payment of which is postponed until the death of a person of fifty one years of age, as set forth in TABLE "A" page 20 of Estate Tax Regulations 70.

10. The respondent, in his determination of the amount to be allowed as a deduction from gross estate for the charitable bequests referred to in paragraph " 8 " hereof, amounting in the aggregate to $150,000.00, used a factor of .32977 and allowed the sum of $49,465.50 in lieu of the amount claimed by the estate namely $73,966.50. In arriving at the said remainder factor of .32977 the actuary for the Bureau considered the possibility that the youngest of the life beneficiaries would be survived by one if not by all of the other six life tenants, as well as the other possibilities of survivorship.

11. IT IS FURTHER STIPULATED AND AGREED that there are only two questions before the Board for decision, namely:

(a) Whether or not anything is to be included in the value of the estate of this decedent, for purposes of Federal Estate Tax, representing the value of the bonds transferred in trust to the Girard Trust Company, trustee, by the two deeds of trust made and executed by the decedent on December 26th, 1918.

(b) What amount should be allowed as a deduction from gross estate, for the purposes of Federal Estate Tax, for the charitable bequests made to the Young Men's Christian Association, the Young Women's Christian Association, and the Salvation Army.

12. That this case is hereby submitted to the Board for decision upon the basis of the pleadings and this stipulation, subject, however, to the right of

both parties to contest, by appropriate proceedings, any decision by the Board with respect to any issue in this case * * *.

The deed of trust by which the petitioner transferred to the trustee Liberty bonds and corporate bonds the income from which was to be paid to Louise Gray Jeffries during her life, and referred to in the stipulation as Exhibit B, is as follows:

THIS INDENTURE, made this 26th day of December in the year of our Lord One Thousand Nine Hundred and Eighteen, between ALFRED J. REACH, of the City of Philadelphia, and State of Pennsylvania, hereinafter called GRANTOR, and GIRARD TRUST COMPANY, a corporation of the State of Pennsylvania, hereinafter called TRUSTEE, WITNESSETH:

THAT Grantor, for and in consideration of the sum of One Dollar to him in hand paid by Trustee at and before the ensealing and delivery hereof, the receipt whereof is hereby acknowledged, and in consideration of the covenants and agreements herein contained, and for the purpose of reserving the properties and estate hereinafter designated, and for the accomplishment of the purposes hereinafter set forth, HATH granted, bargained, sold, assigned, transferred and set over, and by these presents DOTH grant, bargain, sell, assign, transfer and set over unto Trustee, its successors and assigns, the following:

$50,000. United States of America Fourth Liberty Loan 4¼'s

$45,000. Philadelphia Electric Company First Mortgage 5's and such other sums of money, securities or other property, real or personal, as may be delivered to Trustee or assigned to it or its successor or successors by endorsement hereon or otherwise placed under the trusts herein created by a proper instrument or instruments;

To HAVE AND TO HOLD, RECEIVE AND TAKE the above mentioned stocks, securities and other properties and every part thereof unto the said Trustee, its successors and assigns, to and for its only proper use, benefit and behoof forever, IN TRUST NEVERTHELESS for the following uses and purposes, that is to say:

IN TRUST to hold, manage, invest, reinvest and keep invested the corpus or principal thereof, and to collect and receive the income therefrom, and after the deduction of all proper or necessary charges and expenses, to pay over the net income therefrom, quarterly, unto Louise Gray Jeffries, wife of William K. Jeffries, daughter of Grantor, for and during the term of her natural life.

IN TRUST upon the death of the said Louise Gray Jeffries to assign, transfer and pay over the entire corpus or principal held hereunder unto Grantor, if he be living at that time, or, should Grantor not then be living, unto such person or persons as Grantor may by his last Will and Testament direct, limit and appoint.

Trustee shall have power to sell the Philadelphia Electric First Mortgage Five Per cent. bonds hereby assigned to it if, in its judgment, it shall seem advisable so to do and to reinvest the proceeds therefrom in United States of America Liberty bonds.

All payments of income hereunder shall be so made that the same shall be free and clear of the debts, contracts, engagements, alienations and anticipations of the beneficiary herein named and free and clear from the lien of judgments recovered against her and free from liability for levies, judgments, executions and sequestrations.

The deed of trust by which the petitioner transferred to the trustee Liberty bonds and corporate bonds, the income from which

was to be paid to Emma Mercer Christ during her life, and referred to in the stipulation as Exhibit C, is identical with the above quoted deed of trust, with the exception of the name and partial description of the beneficiary.

While the decedent made no specific mention in his will of the powers of appointment reserved in the above mentioned deeds of trust, the will, after providing for certain specific bequests, contains the following provision with respect to the residuary portion of the decedent's estate: ·

EIGHTH: I give, devise and bequeath all the rest, residue and remainder of my estate, real and personal, of every sort and kind, to the Fidelity-Philadelphia Trust Company, IN TRUST, for the uses, persons and purposes, and with the powers following:

IN TRUST, to collect the rents, income and profits thereof and, after deducting the necessary expenses of the trust, to distribute the net income thereof as follows:

IN TRUST, to pay to my sister, Maria L. Reach, during her lifetime an annuity of Twenty-five hundred dollars ($2500) in equal quarterly payments; the first payment to be made within three months after my decease.

IN TRUST, until the decease of my wife and the last survivor of my four children, George A. Reach, Emma M. Christ, Louise G. Jeffries and Bertha A. Reach, and my sons-in-law, to pay over one-third of the residue of the net income during her lifetime to my wife, in equal quarterly payments, and to divide the remaining two-thirds of the net income, during her lifetime, and the whole net income after her decease, as follows:

IN TRUST, to divide said two-thirds or the whole, as the case may be, at each time of quarterly distribution, into as many parts or shares as at each of said times there shall be children of mine then living and children of mine then dead represented by descendants then living; to subdivide the share falling to each set of descendants of a child of mine then dead among them, per stirpes, upon the principle of representation; and to pay over to each child and descendant of a dead child who, at each of said times shall be found entitled, its share of said income in fee simple.

IN TRUST, in the event of the death of either of my married daughters leaving her husband but no issue, her surviving, to pay over to such husband during his lifetime, so much of the income to which such daughter would have been entitled if living, as shall not exceed interest at the rate of five per centum (5%) per annum on One Hundred Thousand Dollars ($100,000); such sum to be paid in like equal quarterly installments.

IN TRUST, upon the death of the last survivor of my wife, children and sons-in-law, to distribute one-third of the principal of the share of which each child received in his or her lifetime the income, to such persons and in such amounts as such child may by Will or instrument in the nature thereof, appoint, and to distribute so much of the entire principal of my estate as shall not have been so appointed, as follows:

To pay to the Young Men's Christian Association of Philadelphia the sum of Fifty Thousand Dollars ($50,000) absolutely;

To the Young Women's Christian Association of Philadelphia the sum of Fifty Thousand Dollars ($50,000) absolutely; and

To the Salvation Army, Incorporated, of Philadelphia, the sum of Fifty Thousand Dollars ($50,000) absolutely.

To divide the remainder of my said residuary estate into as many parts or shares as at that time there shall be children of mine then dead represented by descendants then living; to subdivide the share falling to each set of descendants of a child of mine then dead among them per stirpes, upon the principle of representation; and to pay over to each descendant of mine who shall then be found entitled, its share in fee simple.

Nothing was included in the estate tax return as a part of the decedent's gross estate on account of the Liberty bonds of a par value of $100,000 and the corporate bonds of a par value of $90,000 transferred by the decedent under the two trust deeds to the trustee, the income from which was payable to decedent's two daughters during their respective lives and upon their respective deaths the principal or corpus of such trusts to be paid to the decedent if living and if he were not living then to such person or persons as the decedent might by his will direct, limit and appoint. In determining the net taxable estate of the decedent the respondent has included as a part of the gross estate the amount of $110,217.80 as representing the value of the bonds based upon the life expectancies of the decedent's two daughters who were to receive the income from the bonds during their respective lives.

The petitioners contend that this action of the respondent is erroneous and that no amount should be included in the gross estate on account of the bonds. In support of this contention the petitioners urge that the decedent in creating the two trusts divested himself of all the incidents of ownership of the property transferred, putting it beyond his power to ever repossess it and under the laws of Pennsylvania definitely fixing the remaindermen should he fail to designate in his will to whom the property should go. The petitioners insist that the trust instruments themselves show that all right, title and interest in the trust property passed from the decedent absolutely and irrevocably upon the execution of the instruments, and not only a life interest to the daughters. The petitioners also urge that under the laws of Pennsylvania a gift of property for life with a remainder over to others vests the interests of such others. The petitioners also insist that so far as the two trusts are concerned nothing passed at the time of the death of the decedent.

By two trust deeds executed on December 26, 1918, the decedent placed in trust for two of his daughters the property in controversy. Under the provisions of these instruments the trustee was to pay over the net income from the trust property to the respective daughters for and during the term of the natural life of each. The instruments further specifically provided that upon the death of the respective daughters the trustee was "to assign, transfer and pay over the entire corpus or principal held hereunder unto Grantor, if he be living at that time, or, should Grantor not then be living,

unto such person or persons as Grantor may by his last Will and Testament direct, limit and appoint." We fail to find anything in the trust instruments to indicate that the decedent intended for either of the daughters to receive or that either did receive anything more under the trust instruments than the net income from the property of the respective trusts " for and during the term of her natural life." At all times the decedent had a reversionary interest in the trust property. By the trust instruments the interests remaining after the grant of the income from the property to the daughters for their respective lives was retained by the decedent himself and was not granted or given by him to another or others. At his death the interest thus retained constituted a part of his estate just the same as any other property that he then owned. Since he did not make it the subject of a specific bequest by his will, it became a part of the residuary portion of his estate, the disposition of which the will specifically provided for as heretofore set forth. Under these circumstances the interest retained by the decedent in the property of the two trusts passed upon his death and by the terms of his will to those entitled to take under the residuary clause of the will. Those entitled to share in the residuary estate of the decedent acquired such right not by the terms of instruments creating the two trusts in controversy, but by reason of the decedent's death and the provisions of his will.

If the decedent had provided in the trust instruments that the corpus of each trust should be paid over to him only in the event the beneficiary should predecease him, but that the corpus should go to the beneficiary or another in the event the beneficiary did not predecease him, such a provision alone would not have subjected the corpus of the trusts to tax as a part of the decedent's gross estate. *Nanaline H. Duke et al., Executors*, 23 B. T. A. 1104, and authorities cited.

However, the provisions of these trust instruments went much further. It was provided that the entire corpus or principal of each trust should, upon the death of the beneficiary, be paid over to the decedent, if then living, and if not then living, it should be paid over to such person or persons as the decedent might appoint by his will. Thus it is made clear that the decedent did not intend to transfer to the trustee anything more than the management and control of the trust estates for the purpose of paying the net income to the daughters during their respective lives, and that the decedent intended to and did reserve to himself all interest in and to the corpus of each trust, to be disposed of by him under his will as he might see fit.

These facts, we think, bring the case within the principle applied by the Supreme Court in *Klein* v. *United States*, 283 U. S. 231. In that case the decedent, Klein, prior to his death conveyed certain

real estate to his wife, the deed providing that the grantee should have the land for the term of her natural life, but if she died before the grantor, the reversion in fee should be and remain vested in the grantor. The court held that the real estate was subject to tax, saying:

The two clauses of the deed are quite distinct—the first conveys a life estate; the second deals with the remainder. The life estate is granted with an express reversion of the fee * * * It follows that only a life estate immediately was vested. The remainder was retained by the grantor; and whether that ever would become vested in the grantee depended upon the condition precedent that the death of the grantor happened *before* that of the grantee. The grant of the remainder was, therefore, contingent. * * * It is perfectly plain that the death of the grantor was the indispensable and intended event which brought the larger estate into being for the grantee and effected its transmission from the dead to the living, thus satisfying the terms of the taxing act and justifying the tax imposed.

The facts of the instant case are less favorable for the petitioners than those of the *Klein* case. Here the decedent did not even grant contingent remainders to his daughters. The trust instruments did not purport to provide for the disposition of the corpus, other than to reserve such powers to the decedent.

Each trust beneficiary survived the decedent, and upon his death the beneficial title of the corpus of each trust became vested in the persons appointed by his will. The transfer of the corpus of each trust resulted from the exercise by the decedent of his reserved powers of appointment, and was obviously intended to take effect in possession or enjoyment after his death, upon the decease of the daughters, and thus comes clearly within the purview of the taxing statute. Sec. 302 (c), Revenue Act of 1926. *Sargent* v. *White*, 50 Fed. (2d) 410; *Union Trust Co.* v. *United States* (Ct. Cls.) 54 Fed. (2d) 152.

In view of the foregoing we think the contention of the petitioners must be denied. As the respondent has included in the gross estate of the decedent only the value of the property in controversy based upon the life expectancies of the two daughters who were to receive the income therefrom during their respective lives, and there being no controversy between the parties as to such value, we think the respondent's action is correct and it is accordingly sustained. Cf. *Chemical Bank & Trust Co. et al., Executors*, 25 B. T. A. 1153.

The decedent made certain charitable bequests totaling $150,000. The payment of these bequests was deferred until the death of the last survivor of seven persons, aged respectively, 51, 55, 55, 57, 57, 60 and 82 years. In the computation of the decedent's gross estate the petitioners took a deduction of $73,966.50 as representing the present

value of $150,000 as of the date of the decedent's death. The amount of the deduction was computed by using the factor .49311 as representing the present worth of $1, the payment of which is postponed until the death of a person 51 years of age. In determining the deficiency here involved the respondent allowed only $49,465.50 of the amount of $73,966.50 taken by the petitioners. In computing the amount allowed the respondent used a factor of .32977. In arriving at the factor of .32977 the respondent considered the possibility that the youngest of the life beneficiaries would be survived by one if not by all of the other six life tenants, as well as other undisclosed possibilities of survivorship. The issue with respect to this action of the respondent is what amount should be allowed as a deduction from the gross estate on account of the charitable bequests in question.

In *Henry R. Ickelheimer et al., Executors*, 14 B. T. A. 1317, the will of the decedent provided that the income from certain property and specific amounts of money should be paid to the widow of the decedent during her lifetime and that at her death such property and money should be paid over to certain corporations organized and operated exclusively for religious, charitable, scientific, literary or educational purposes. We there said:

It is apparent that the corporations took vested remainders at the time of the death of the decedent. The value of such remainders is properly deductible from the gross estate. *Mercantile Trust Co., Executor*, 13 B. T. A. 85.

The estate tax is a tax upon the passing of the estate of the decedent and the value of the estate must be determined as of the time of the death of the decedent. The corporations did not receive the absolute ownership of the property in question, but were entitled to the corpus only after the expiration of the life estate of the widow. In such a case it is proper to value the remainder by reducing the amount to be received by an amount representing the delayed receipt of the bequest by the charities. See *Dugan* v. *Miles*, 292 Fed. 131; *United States* v. *Farr's Executor*, 196 Fed. 996; and *Simpson* v. *United States*, 252 U. S. 547.

Where property is given to charity, but subject to the use or enjoyment of another for life, the value of the property for the purpose of determining the amount deductible from the gross estate is to be determined by the use of mortality tables. *Ithaca Trust Co.* v. *United States*, 279 U. S. 151; *Cortlandt F. Bishop, Executor*, 23 B. T. A. 920. Since the bequests here in controversy were to be paid upon the death of the last survivor of seven persons, whose ages ranged from 51 to 82 years, the petitioners computed the deduction taken by them on the basis of the life expectancy of a person 51 years of age, on the ground that the remaining life expectancy of a person of that age was greater than that of any of the six others, who were from four to twenty-one years older. The factor used by the petitioners on the

foregoing basis was .49311. The respondent determined a factor of only .32977 on the principle that the life expectancy of the survivor of seven persons is greater than the life expectancy of one person in the group, even though that person be the youngest. The parties submitted this question on the theory that it was a question of law. In our opinion, this is a question to be determined as a fact based on the testimony of qualified witnesses. It is not a question of law as to what the life expectancy of a person is, whether that person be an individual alone or the survivor of a group of individuals. The determination of the Commissioner is presumed to be correct until overcome by evidence. There is nothing in the record here to show that the determination of the Commissioner is not correct. We accordingly approve his action in this respect.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*